UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 17 CR 065 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| RAMON CONTRERAS-REYES, | ) | |

## GOVERNMENT'S POSITION PAPER AS TO
## SENTENCING FACTORS

Defendant is coming before the Court for sentencing on a two Count Indictment issued on February 1, 2017. PSR ¶ 2-3. Count One charges that defendant is an alien who previously had been deported and removed from the United States on or about February 19, 1998, May 22, 2003, and March 12, 2007, but who was present and found in the United States without previously having obtained the express consent of the United States Attorney General, or the Secretary of the Department of Homeland Security, for reapplication by defendant for admission into the United States; in violation of Title 8, United States Code, Section 1326(a) and Title 6, United States Code, Section 202(4). PSR ¶ 2.

Count Two of the indictment charges defendant, a convicted sex offender, with failure to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA), in violation of Title 18, United States Code, Section 2250(a). PSR ¶ 3; 9. This Count is predicated on the defendant's 1996 conviction of a brutal attempted sexual assault with intent to commit rape in California. PSR ¶ 45. Defendant was notified of his lifetime, cross jurisdictional registration requirement

as a Tier III sex offender both in 1998, at the time of his original conviction for this crime, and again at his release from prison in 2003. PSR ¶ 9; 11. However, defendant has never registered as a sex offender anywhere in the United States where he has resided in violation of the requirements of SORNA. *Id.*

Defendant's presence in the United States most recently came to the attention of law enforcement when, on December 22, 2016, a controlled delivery of a package containing methamphetamine was made to defendant's home address in Des Plaines, Illinois. PSR ¶ 59; *See also* Supplement to Government's Version of the Offense. Defendant accepted the delivery of the package and law enforcement agents entered defendant's house when the electronic monitor inside the parcel was triggered indicating that the package was opened. *Id.* The agents found the defendant in a back bedroom with the open package of suspect drugs and a box cutter. *Id.* No criminal charges were brought against the defendant as a result of this incident.

Additionally, defendant's personal history includes multiple examples of dangerous behavior including being arrested for driving in a very reckless manner with a blood alcohol concentration of .214. PSR ¶ 46. In addition to the defendant's recent December 2016 arrest involving methamphetamines discussed above, he has also acknowledged using cocaine as recently as September 2016. PSR ¶ 83. Defendant and his wife both have acknowledged that he has had an alcohol use problem since he was young but he has never participated in any substance abuse treatment. PSR ¶ 78; 81-86. Therefore, given the defendant's serious criminal history coupled with his untreated substance abuse problems, the sentence imposed should consider the need for protection of the public as a factor pursuant to 18 U.S.C. § 3553(a)(2)(C).

Defendant has been deported on three prior occasions although this is his first criminal prosecution for illegal reentry. Since the defendant has admitted that he would routinely "come and go" from Mexico to the United States after his deportations, it is especially important for the sentence imposed by this Court to address the factors listed in 18 U.S.C. § 3553(A)(2). The sentence imposed should reflect the seriousness of both the Illegal Reentry offense and the SORNA violation. A strong message of deterrence needs to be sent to this defendant in order to successfully dissuade him from continuing his pattern of repeatedly illegally reentering the United States to rejoin his family and continue his criminal lifestyle. A sentence within the sentencing guidelines range would be sufficient but not greater than necessary to achieve these results.

In addition to imposing a significant sentence of imprisonment within the correct sentencing guidelines range as discussed in greater detail below, the government agrees with the probation officer's sentencing recommendation that the defendant should be sentenced to a three year period of supervised release following the completion of any imposed sentence of imprisonment for the instant offenses.

## I.  THE GOVERNMENT'S OBJECTIONS TO THE SENTENCING CALCULATIONS CONTAINED IN THE PSR

The government agrees with the Presentence Investigation Report's calculations of the defendant's offense level as 22. PSR ¶ 20-39. The government objects to the Presentence Investigation Report's calculation of the defendant's

3

criminal history points as totaling seven points with the resulting criminal history category being at IV.  PSR ¶ 8-50.

A.   <u>The Defendant's California conviction for Assault with Intent to Commit Rape Should be Afforded Three Criminal History Points under the Provisions of USSG §§§4A1.2(e)(1) & 4A1.2(k)(2)(A).</u>

In the instant plea agreement the government previously calculated the defendant's offense level as 22 and his criminal history category as II.  A total of 3 criminal history points were accorded to the defendant's criminal history calculation by the government.  These three points were based only on the 2006 Cook County aggravated fleeing and eluding conviction for which the defendant was sentenced to two years in custody.  Therefore, the government erroneously concluded that the defendant's criminal history category was a category II.  Under the government's incorrect calculations the Guidelines Sentence range was stated as being 46-57 months' incarceration in the Plea Agreement.

However, the PSR correctly assessed an additional three criminal history points for the defendant's 1996 California conviction for assault with intent to commit rape. PSR ¶ 46. Defendant was resentenced to 4 years of imprisonment in 2001 after a violation of probation on this assault with intent to commit rape conviction was found by the sentencing court. Defendant was released from custody based on this resentencing on May 11, 2003.

Under the provisions of USSG §4A1.2(k)(2)(A) convictions in which probation has been revoked and an adult term of imprisonment totaling more than a year and a month has been imposed, the date of last release from incarceration is the date from which the applicable time period under USSG §4A1.2(e)(1) begins to run. The

4

applicable time period ends under the provisions of USSG §4A1.2(e)(1) when the defendant's instant offense commenced. Illegal reentry offenses are "continuing offenses" and the statute of limitations does not start to run until the defendant is found by immigration officials in the United States after a prior deportation. *U.S. v. Herrera-Ordones,* 190 F.3d 504, 509 (7th Cir. 1999) Defendant's "found date" for this illegal reentry offense was December 22, 2016, as stated in the indictment.

Therefore, since less than the maximum 15 year period under USSG §4A1.2(e)(1) has passed between the applicable start date of May 11, 2003 (release date from custody), and the end date of December 22, 2016 (commencement date for the illegal reentry charge), the defendant should be afforded 3 criminal history points based on this California conviction for assault with intent to commit rape. PSR ¶ 46.

The government now calculates that the defendant should be afforded a total of six (6) criminal history points based on three points (3) for his California assault to commit rape conviction and three (3) points for his 2006 Cook County aggravated fleeing and eluding conviction. Therefore, the defendant's six (6) criminal history points now result in him having a Criminal History Category of III. With an offense level of 22 and a criminal history category of III, the defendant's sentencing guideline range is 51 months to 63 months imprisonment.

B.  The Defendant's 2004 Destruction of Property Conviction Should Not Receive a Criminal History Point under the Provisions of USSG §4A1.2(e)(2).

The government objects to the addition of one (1) criminal history point that was counted in the PSR based on the defendant's 2004 destruction of property conviction. PSR ¶ 47.  The defendant was given a $750 fine and not sentenced to any period of incarceration for this conviction.  *Id.*

Since the defendant was not sentenced to more than a year and a month for the destruction of property conviction, the applicable time period for counting this conviction is found under the provisions of USSG §4A1.2(e)(2) and is ten years.  More than ten years have elapsed between the August 25, 2004, conviction date and the defendant's "found date" for his illegal reentry offense of December 22, 2016. Therefore, the one (1) criminal history point added for this conviction is in error. PSR ¶ 47.

The incorrect total of seven (7) criminal history points as calculated in the PSR resulted in defendant's criminal history category being calculated as a IV.  The resulting sentencing guidelines range of 63 months to 78 months of imprisonment based on an offense level of 22 and a criminal history category of IV is therefore incorrect as well. PSR ¶ 45-50.

C.  The Government Calculates the Defendant's Sentencing Guidelines Range as 51 to 63 Months of Imprisonment.

As explained above the government has afforded the defendant a total of six (6) criminal history points after including an addition three (3) criminal history points for his California criminal conviction for assault with intent to commit rape.  The six

6

(6) criminal history points result in the defendant having a criminal history category of III. The government posits that defendant has an offense level of 22 and a criminal history category of III and, therefore, the defendant's sentencing guideline range is 51 months to 63 months of imprisonment.

## II.    BACKGROUND

On February 1, 2017, Ramon Contreras-Reyes was indicted on one count of Illegal Reentry by a deported alien, in violation of Title 8, United States Code, Section 1326(a), and Title 6, United States Code, Section 202(4) and one count of failure to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA), in violation of Title 18, United States Code, Section 2250(a). Dkt. No. 1. On October 30, 2018, at a change of plea hearing, defendant pled guilty to a Plea Agreement. Dkt. No. 25.   This matter is scheduled for sentencing on May 9, 2018. The facts of this case are set forth in the government's version of the offense and the government's supplemental version of the offense which are both attached to the Presentence Investigation Report ("PSR") and are incorporated by reference.

In summary, defendant, now 45 years old, claims that he is a native and citizen of Mexico who entered the United States unlawfully in approximately 1983 or 1984 as a ten year old child to live with his parents who were already present in the United States.   PSR ¶ 65. Defendant was later admitted to the United States as a lawful permanent resident (LPR) in 1993.

Defendant has three convictions as an adult with his first conviction in California for assault with intent to commit rape being the most violent and serious

of his convictions. PSR ¶ 45. The PSR details graphically the circumstances of this brutal sexual attack by the defendant on a young woman. *Id.* Defendant was initially sentenced to 180 days' imprisonment for that offense and was initially released from the California Department of Justice on or about January 12, 1998.

Since his first release from state custody in 1998 on this assault with intent to commit rape, defendant was a convicted sex offender required to register as a Tier III offender under SORNA. Prior to his release from custody in 1998, defendant received notice of and understood his duty to register as a sex offender and the requirements for his registration.

Defendant was first deported from the United States on February 10, 1998, after an Immigration Judge found him deportable. The immigration judge's final deportation order terminated defendant's Legal Permanent Resident (LPR) status by operation of law. *See Matter of Lok*, 18 I&N Dec. 101 (BIA 1981).

At some point after his February 10, 1998, deportation the defendant illegally reentered the United States and began again breaking the criminal laws of this country. On or about October 23, 2001, following a probation violation, defendant was resentenced to four years' imprisonment for his California conviction for assault with intent to commit rape. PSR ¶ 45.

Prior to his release from this newly imposed four year sentence of incarceration on the assault with intent to commit rape conviction, defendant again received notice

of his duty to register as a sex offender and the requirements for his registration. Defendant was released from the California prison system's custody on May 11, 2003, and removed from the United States to Mexico the following day or on May 12, 2003.

After illegally reentering the United States at an unknown time following his May 12, 2003, removal, defendant's reckless nature and disdain for legal authority resulted in his second conviction for aggravated fleeing. PSR ¶ 46. This conviction occurred in the Circuit Court of Cook County, Illinois on or about October 31, 2006, and defendant was sentenced to two years' imprisonment. *Id.* After he was released from his term of incarceration on the aggravated fleeing conviction, the defendant was removed from the United States by immigration officers for the third time on March 12, 2007.

At some time between March 12, 2007 and December 21, 2016, the defendant yet again unlawfully reentered the United States without inspection or admission by immigration officials. The defendant was discovered in the United States by ICE based upon a criminal investigation involving narcotics being sent through the United States Postal Service. PSR ¶ 46. ICE administratively arrested the defendant on December 22, 2017, and he was subsequently criminally charged by indictment in February 2017, with both illegal reentry and a violation of SORNA. Dkt. No. 1.

## III.   ARGUMENT

### A.   The History and Characteristics of the Defendant Reflect that He is a Recidivist Criminal Offender with no Concern for the Safety of Others and a Disregard for All the Laws of the United States.

Defendant has a long history of living in the United States but for most of his thirty plus years in this country, he was without any lawful immigration status. ¶ 61-72. According to the PSR, the defendant first came to the United States when he was 10 years old to reunite with his parents although he was sent back to live in Mexico after a brief period of time here. PSR ¶ 65. Defendant ultimately came back to this country on his own in 1988 at approximately 14 or 15 years old, attended two or three years of high school in California and started a family when he was 18 years old. *Id.*

 In 1993 the defendant was admitted as a Legal Permanent Resident (LPR) of the United States and he had this lawful status until 1998 when he was first ordered deported.  Defendant is now married to another woman since 2004 and has two children with her as well as three other children from the earlier relationship. PSR ¶ 66-68:

Defendant's personal history shows that he is not a law-abiding, contributing member of society. The defendant's serious criminal convictions are indicative of a violent, anti-social nature and reflective of his overall disregard for the safety and well-being of others. PSR¶ 1-59.  While the defendant's first conviction occurred over twenty years ago, or in January 1996, this assault with intent to commit rape was extremely brutal and the defendant's violent nature is evident from a review of the

details recounted in the PSR. PSR ¶ 45. The defendant viciously assaulted a young woman while trying to rape her. *Id*.

Defendant was initially sentenced to 180 days' imprisonment for that offense and three years' probation but he was resentenced in 2001 to four years' incarceration after violating the terms of his probation. Defendant was made aware at the time of his assault with intent to commit rape conviction in 1996 that he was now considered to be a convicted sex offender and was required to abide by the Sex Offender Registration laws of the various jurisdictions in which he resided

Specifically, defendant signed a form entitled ""Notice of Registration Requirement" dated June 12, 1998, that contained six stipulations related to his release. By signing the sex offender notification form, defendant indicated that he understood that he was required to register as a sex offender with law enforcement annually each year for the rest of his life. Yet the defendant has never in the intervening 22 years since this conviction occurred registered as a sex offender anywhere in the United States.

The Sex Offender Registration and Notification Act (SORNA), contains criminal penalties under 18 U.S.C. § 2250 for failing to comply with the sex offender registration laws of the state in which a defendant resides. SORNA is intended to further public safety by granting widespread public access to information on the addresses of convicted sex offenders in each community. *See Carr v. United States*, 560 U.S. 438 (2010)

Defendant's complete failure to register as a sex offender has at a minimum defeated the public's right to know that a sex offender resides in their neighborhood.

11

State and local law enforcement has also been kept in the dark about defendant's status and presence in their area of responsibility because he has neglected to comply with the Sex offender Registration requirements.

The PSR details the series of events leading up to the defendant's arrest that resulted in his second conviction for aggravated fleeing in 2006. PSR ¶ 46. The defendant's reckless nature and disrespect for law enforcement is vividly on display in the PSR's recitation of the 2004 Des Plaines police report. *Id.* Specifically, police first observed the defendant driving in a very reckless manner and throwing a beer bottle out of his car window. *Id.* The police then tried to stop the defendant's vehicle but the defendant refused to stop and subsequently led officers on a car and foot chase before being captured and arrested. *Id.* The defendant, then 31 years of age, had a seventeen year old passenger driving in the vehicle with him. Blood tests confirmed that the defendant had been heavily drinking that day and his blood alcohol concentration was tested at .214. *Id.*

The defendant's decision to drive that day after excessively drinking was irresponsible and potentially dangerous for anyone that came into contact with him. Significantly, the defendant not only has a long history of alcohol abuse, he experienced withdrawal symptoms from alcohol after his most recent arrest in December 2016 which indicates he suffers from alcoholism. PSR ¶ 75; 81-87. Nevertheless, the defendant has never sought any treatment for his problems with alcohol and he continues to present a future danger to others if he does not meaningfully deal with this substance abuse issue. PSR ¶ 75

12

While the defendant was not criminally charged after his most recent encounter with law enforcement on or about December 22, 2016, the facts and circumstances relating to this incident offer valuable insights into the defendant's true character. PSR ¶ 59. On December 22, 2016, law enforcement executed a controlled delivery of a package sent through the United States Postal Service that had previously been found by investigators to contain methamphetamine. *Id.* The parcel was addressed to 7500 Elmhurst Road, Lot 18, in Des Plaines, Illinois. *Id.* The defendant and his family including two young children resided at this address. PSR at page 3.

Defendant accepted the delivery even though the parcel was addressed to ""Ramon Grande" and brought the package into the house. After accepting delivery, defendant took the package with him and went to several other locations, including a restaurant, before returning to Elmhurst Road, package in tow. Agent surveilled defendant during this time. At approximately 5:00 p.m., the electronic monitoring beacon in the package signaled that the package had been opened, which was the condition for anticipatory search warrant that law enforcement had obtained to authorize their entry into the defendant's home. Agents entered the defendant's house (after knocking and announcing) through the unlocked front door, and found defendant in a back bedroom with the package of suspect drugs and a box cutter. Drug lab results confirmed that the package contained 445.6 +/- 1.2 grams of methamphetamine, and was 98% pure +/- 5%.

The defendant regardless of his level of culpability was found in possession of a significant amount of extremely pure methamphetamine when he was arrested at

13

his home in Des Plaines, Illinois on December 22, 2016. It is also worth noting that the defendant has two young sons who live in this same home and could have come into contact with this dangerous drug. The methamphetamine was packaged with various children's toys, crayons, coloring books, and candy and this packaging increased the risk that his children would have been drawn to the package and its other illicit and highly dangerous contents. S*ee* Supplement to Government's Version, Exh.A, Des Plaines Police Report.

The defendant put his family in serious danger by accepting this narcotics delivery and this incident illustrates that he continues to associate himself with illegal activities even at the age of 44. His lawless actions also continue to put his family and others in the larger community at risk for serious harm from his likely future crimes. *See,* Sentencing Recommendation at 2.

> **B.** <u>Seriousness of the Offense and the Need to Promote Respect for the Law,</u>
> <u>Provide Just Punishment, and Afford Adequate Deterrence By Imposing</u>
> <u>a sentence within the Sentencing Guidelines range.</u>

Defendant is highly incentivized to return to the United States unlawfully in the future because his wife, six children, six siblings and other extended family all reside in this country. PSR ¶ 42-59. The defendant's ties to his children and other family members in the United States are precisely the main reason that the defendant is likely to come back to the United States time and again in the future. PSR ¶ 68-69. As the Seventh Circuit explained in *United States v. Ortega-Galvan*, 682 F.3d 558, 561 (7th Cir. 2012), where it is the defendant's "attachment to the

United States that incites his illegal returns after removal, that attachment is as strong an argument for a longer sentence as for a shorter one."

It is clear from the defendant's three removals and subsequent illegal reentries as well as his admission that he would "come and go" from Mexico to the United States, that the defendant has never accepted that he must obey the immigration and criminal laws of the United States and remain in Mexico. PSR ¶ 68-69.  In the recent decision of *United States v. Sanchez-Lopez,* 858 F.3d 1064, 1067-1068 (7th Cir. 2017), the Seventh Circuit agreed that the District Court acted well within its discretion in concluding that the guideline sentence range on an illegal reentry conviction should be enhanced by 90 days to send the message to both the defendant and "to those who reenter this country for lots of economic and other hardship reasons" that they must "make a life in Mexico, notwithstanding whatever pulls there may be."

The sentence in this case also must reflect that the defendant's illegal reentry offense and violation of SORNA were crimes that he committed over a span of more than twenty years. Both crimes are in and of themselves  serious offenses as reflected by the maximum sentence of 10 years imprisonment for a violation of SORNA and up to 20 years imprisonment for an illegal reentry committed by an alien convicted of an aggravated felony.

A guideline range sentence of between 51 to 63 months is justified in the defendant's case because such a sentence also reflects the seriousness of defendant's offense of illegal reentry offense, which continues to be a significant problem in the United States.  For example, in 2015, the Department of Homeland Security apprehended over 450,000 aliens.  During that same year, over 300,000 aliens were

removed from the United States pursuant to orders of removal, with over 400,000 aliens removed to Mexico. The costs for apprehending, processing, and removing these aliens are significant and are repeated each time the same individual elects to return illegally again to this country. These numbers reflect the importance of the instant prosecution in not only specific deterrence for the defendant but in general deterrence as well.

Specific and general deterrence are also important considerations in this defendant's sentencing. The defendant has admitted that, over the years, rather than attempting to meaningfully start a new life in Mexico after his deportation, defendant choose with little adverse consequence to instead return again and again to the United States. PSR ¶ 67-69. The defendant should also be sentenced to a significant period of imprisonment under the sentencing guidelines in order to also deter others from committing these same offenses. A significant sentence for the defendant on a first illegal reentry offense would inarguably send a strong message of general deterrence to others that contemplate illegally returning to the United States after being removed.

Additionally, the defendant has not been charged with the other multiple illegal reentries he has committed over the years so the instant sentence imposed should be within the sentencing guidelines range to account for the fact that defendant's criminal history calculations cannot adequately account for these other serial reentries.

The defendant has never meaningfully changed his behavior as evinced by his most current arrest in December 2106 when, at age 44, he was involved in a scheme

to obtain methamphetamine through a U.S. Postal Service delivery at his and his family's home. The defendant is likely to continue acting recklessly and often criminally in the future despite being middle aged now. Therefore, the sentence imposed on the defendant should also consider the need to protect the public from the defendant's future crimes as 18 U.S.C. §3553(a)(1)(C) dictates. At a minimum the public will be protected for at least the period in which the defendant is incarcerated and this is another reason to impose a sentence within the 51 to 63 months' range that the sentencing guidelines suggest.

Finally, the defendant's lack of higher education, absence of employment skills, and any significant past history of verifiable employment also increase the risk that he will return to the United States to continue supporting himself through crime.

C.  <u>A Term of Supervised Release Should Be Imposed at Sentencing to Provide Additional Deterrence as well as Serve as a Public Protection Measure.</u>

To deter against a future unlawful reentry, this Court should impose a term of supervised release on the defendant as recommended by the instant sentencing recommendation. The Sentencing Commission has also concluded that while supervised release is generally unnecessary for a defendant likely to be removed after his release from prison, sentencing courts still may consider imposing supervised release if "it would provide an added measure of deterrence and protection." See U.S.S.G. § 5B1.1, cmt. n. 5. The government also agrees that, given defendant's decades long history of multiple reentries, imposition of supervised release for a term of three years is an appropriate length of time.

As removal does not terminate a term of supervised release, a term of supervised release would provide additional deterrence against a defendant making a future illegal reentry in at least two ways. *See United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) (deportation does not extinguish conditions of supervised release).

To begin with, defendant would be subject to an additional 2 criminal history points under U.S.S.G. § 4A1.1(d) for committing an offense while on supervised release if he illegally reentered during the imposed supervised release period. Also, defendant would face the possibility of a separate charge for violating the conditions of supervised release if he illegally reentered the United States while his term of supervised release was in effect. *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir.2015) (defendant's criminal history posed a high risk of recidivism, including "the risk of violent crime," and defendant's past "difficulty complying with conditions of supervision" support [a] finding that a term of supervised release was warranted.)

The government agrees with imposing mandatory conditions #1 (shall not commit another Federal, State or local crime); #2 (shall not possess a controlled substance); #4 (register and comply with SORNA), #5 (cooperate in collection of a DNA sample); and #6 (refrain from using controlled substances and submit to testing) as recommended in the Sentencing Recommendation.

The government also agrees that discretionary condition of supervised release # 8 (cannot possess weapons) should also be imposed as recommended in the Sentencing Recommendation. Given defendant's status as an illegal alien and his history of reckless and criminal actions, it is in the interests of public safety that he

18

be expressly prohibited from possessing any firearms or weapons per discretionary condition #8.

Additionally, the government recommends that the following two additional discretionary conditions of supervised release should be included by the Court in sentencing the defendant to a term of supervised release: #15 (report to probation officer) and #21 (surrender for deportation and not reenter if ordered deported). While defendant will be removed from the United States after serving his sentence on the instant offense, the Government believes that discretionary condition of supervised release #15 (report to a probation officer) is necessary in the event that defendant does reenter illegally. This condition puts defendant on notice that he is still obligated to report to the Probation office if he does return and a violation of this condition would be relatively simple for the government to establish if the defendant is encountered in the United States within the supervised release period.

Finally, discretionary condition of supervised release #21 (surrender for deportation and not reenter if ordered deported) should be added if the Court elects to impose a term of supervised release. As the Court in *United States v. Akinyemi*, 108 F.3d 777, 780 (7th Cir.1997) noted, it is advisable to include as a specific condition of supervised release that a defendant who is removed cannot reenter. If the defendant does decide to return illegally in the future, he may be additionally deterred from doing so at least within the imposed period of supervised release.

## IV.     Conclusion

It is evident from his personal history of conduct that defendant never had any respect for the laws or the legal system of the United States. Defendant, according to the PSR, has a wife and five children who live in the United States and none of his family are intending to move to Mexico in the future. PSR ¶ 68-69. Therefore, the defendant remains highly incentivized to return illegally to the United States in order to be with his family. As his past history has shown, when the defendant illegally reenters the United States, he also returns to violating the criminal laws of this country.  Defendant is unlikely to change his pattern of disregard for the laws of this nation unless, as the Sentencing Recommendation suggests, a strong message of deterrence is sent to him by imposing a sentence within the correct Sentencing Guidelines range of 51 to 63 months'.

Therefore, for the reasons set forth above, and in consideration of the factors enumerated under 18 U.S.C. § 3553(a), the government respectfully requests that this Court impose a sentence within the 51 to 63 months of imprisonment guidelines range, along with a three year period of supervised release following any sentence imposed.  A sentence within this guidelines range is sufficient but not greater than

necessary to satisfy the principles set forth in the Sentencing Guidelines as well as take into account the 18 U.S.C. § 3553(a) enumerated factors.

.

Respectfully submitted,


JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ Christine M. Young
CHRISTINE M. YOUNG
Special Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5361